■ In the Matter of DONALD SICA et al., Respondents, v BOARD OF EDUCATION OF THE CITY OF NEW YORK et al., Appellants. [640 NYS2d 610] —In a proceeding for leave to serve late notices of claim pursuant to General Municipal Law § 50-e (5), the Board of Education of the City of New York and Murray Brenner separately appeal, as limited by their briefs, from so much of an order of the Supreme Court, Richmond County (Cusick, J.), dated August 3, 1994, as granted the branch of the petitioners' motion which was for leave to serve late notices of claim on behalf of the infant claimants.

Ordered that the order is reversed insofar as appealed from, as a matter of discretion, with one bill of costs, and that branch of the motion which is for leave to serve late notices of claim on behalf of the infant claimants is denied.

On this record the Supreme Court improvidently exercised its discretion in granting leave to serve late notices of claim (*see,* General Municipal Law § 50-e [5]).

In determining whether to grant or deny a motion to serve a late notice of claim, it is well settled that the court must review all relevant factors. The key factors are whether a petitioner has met his or her burden to show (1) that the municipality acquired actual knowledge of the essential facts of the claim within the statutory 90-day period or a reasonable time thereafter, (2) a reasonable excuse for the delay, and (3) that the municipality was not substantially prejudiced by the delay in

its defense on the merits (*see, Matter of Diaz v City of New York,* 211 AD2d 789; *Matter of O'Mara v Town of Cortlandt,* 210 AD2d 337; *D'Anjou v New York City Health & Hosps. Corp.,* 196 AD2d 818; *Matter of Morris v County of Suffolk,* 88 AD2d 956, *affd* 58 NY2d 767).

The petitioners have failed to submit evidence that the appellants had actual knowledge of the claims of the infant claimants within 90 days of the occurrence or within a reasonable time thereafter. What satisfies the statute is not knowledge of the wrong but notice of the claim. The municipality must have notice or knowledge of the specific claim and not general knowledge that a wrong has been committed (*Washington v City of New York,* 72 NY2d 881; *Matter of Hubbard v City School Dist.,* 204 AD2d 721).

Furthermore, the appellants would be substantially prejudiced if leave to serve late notices of claim was granted. The appellants would be unable to refute the petitioners' claim that the city-wide reading and math tests of the infant claimants were tampered with because the actual city-wide reading and math tests taken by the infant claimants had been destroyed, and it would be impossible to show that the tests of these specific students were not tampered with.

The case of *Helbig v City of New York* (212 AD2d 506), relied upon by the dissent, is distinguishable since the issue in that case was whether the complaint stated a cause of action and not whether leave to serve a late notice of claim should be granted. The extrapolation of *Helbig* to the instant case cannot overcome the fact that the petitioners failed to show that the appellants had timely notice of the claims and that the appellants would not be prejudiced by service of late notices of claim. Balletta, J. P., O'Brien and Sullivan, JJ., concur.

Miller, J., dissents and votes to affirm the order appealed from with the following memorandum: I do not concur in the conclusion shared by my colleagues in the majority that the Supreme Court improvidently exercised its discretion in granting the infant claimants' applications for leave to serve late notices of claim. I would therefore affirm the order on appeal.

This appeal marks the second occasion that the underlying incident has been before us. The appellant Murray Brenner was, at all relevant times, the principal of P.S. 5, a New York City Public School on Staten Island. It is alleged that for the years 1986 through 1990, the infant claimants were students at P.S. 5 whose grades on certain standardized math and reading tests were altered by Brenner for the apparent purpose of improving the status of P.S. 5 by causing it to climb in the

rankings of New York City Public Schools. According to one newspaper account, between 1979 and 1990, P.S. 5 jumped from number 173 to number 3 in the city-wide rankings of elementary school standardized exam scores and had ranked first for the years 1985 and 1986. In July 1991, the Chancellor of New York City Schools confirmed that Brenner had indeed altered the test scores of P.S. 5 students. In each of the underlying cases before us, it is alleged that as a result of the inflated test scores received by each of the infant claimants, inappropriate educational determinations were made as to their future placements. In essence, they allege that once the infant claimants were matriculated with other students in junior high school on an even playing field, their true capabilities became apparent. As a result, some were not provided with the special education placements they actually required and others were inappropriately placed in advanced classes in which they did not belong. All allegedly suffered emotional and psychological injuries.

In *Helbig v City of New York* (212 AD2d 506), we recognized the potential viability of a similar claim. In that case, brought on behalf of another former P.S. 5 student, we held that notwithstanding the nonactionability of a theory of educational malpractice, the underlying wrong could be redressed in a properly pleaded fraud claim or via claims to recover damages for intentional torts. We also determined that issues of fact existed as to whether or not Brenner committed these alleged acts within the scope of his employment and thus, whether or not the Board of Education of the City of New York (hereinafter the Board) could be potentially, vicariously liable (*Helbig v City of New York, supra,* at 508-509). In my opinion, the instant cases should be treated no differently.

The notices of claim herein were all served on the Board in October 1993. The action in *Helbig* was commenced in August 1992. All claims arose in or about 1986 to 1990. Obviously the claimants could not serve their notices of claim within 90 days after the occurrence of the acts complained of as Brenner did not announce his alleged fraudulent tampering. Rather, he concealed his conduct and the Board only learned of it in or about July 1991. Clearly, under these circumstances, the Board obtained actual knowledge of Brenner's alleged wrongdoing no later than July 1991, and the infant claimants cannot be faulted for the failure to uncover the alleged wrongful acts of the school principal prior thereto.

Admittedly, the infant claimants failed to interpose their claims promptly after the Board announced its findings,

notwithstanding extensive coverage in the local press which should have brought the situation to the attention of their parents. Nevertheless, it is equally clear that the Board was caused to suffer no prejudice as a result of this further delay. The record discloses that it was the routine practice of the Board to destroy the standardized test answer forms one year after each test was administered. Thus, for example, all five infant claimants' April 1987 test papers were destroyed by April 1988. Accordingly, by July 1991, when the Board announced the results of its investigation, all of the test papers of all of the infant claimants had already been destroyed. Obviously, there is no delay attributable to these infant claimants which will cause the Board to endure any prejudice beyond that presented in the *Helbig* case. Simply stated, the Board was not prevented from investigating the underlying incidents or from examining the relevant test papers as a result of anything done or not done by the infant claimants.

As the Supreme Court correctly reasoned, the appropriate analysis of this matter is whether or not the infancy toll available pursuant to CPLR 208 should be applied in this case. I conclude that it should. As noted, the infant claimants' delays in serving their notices of claim were attributable, in part, to the concealment of the alleged wrongdoer, and beyond that to claims of continued unawareness of the alleged wrong. Given the Board's complete failure to demonstrate the existence of any actual prejudice flowing to it attributable to the delays in filing the instant notices of claim, the order granting leave to serve late notices of claim should be affirmed (*see, Sanna v Bethpage Pub. Schools Union Free School Dist. 21*, 193 AD2d 606; *Matter of Andersen v Brewster Cent. School Dist.*, 189 AD2d 1068; *Moore v New York City Hous. Auth.*, 184 AD2d 238; *Friedman v Syosset Cent. School Dist.*, 154 AD2d 337).